# EXHIBIT B

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3  UNITED STATES OF AMERICA,          ) AU:21-CR-00203(1)-LY
                                       )
 4      Plaintiff,                     )
                                       )
 5  v.                                 ) AUSTIN, TEXAS
                                       )
 6  RYAN TAYLOR FAIRCLOTH,             )
                                       )
 7      Defendant.                     ) MAY 27, 2022

 8          *********************************************
                 TRANSCRIPT OF SENTENCING HEARING
 9               BEFORE THE HONORABLE LEE YEAKEL
            *********************************************
10
    APPEARANCES:
11
    FOR THE PLAINTIFF:   G. KARTHIK SRINIVASAN
12                       MICHAEL C. GALDO
                         UNITED STATES ATTORNEY'S OFFICE
13                       903 SAN JACINTO BOULEVARD, SUITE 334
                         AUSTIN, TEXAS 78701
14
    FOR THE DEFENDANT:   SHAWN C. BROWN
15                       LAW OFFICE OF SHAWN C. BROWN, P.C.
                         540 SOUTH SAINT MARY'S STREET
16                       SAN ANTONIO, TEXAS 78205

17  COURT REPORTER:      ARLINDA RODRIGUEZ, CSR
                         501 WEST 5TH STREET, SUITE 4152
18                       AUSTIN, TEXAS 78701
                         (512) 391-8791
19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 15:41:38 | 1 | (Open court, defendant present) |
| 15:41:38 | 2 | THE CLERK:  The Court calls for sentencing 21-CR-203, |
| 15:41:41 | 3 | *United States v. Ryan Taylor Faircloth*. |
| 15:41:44 | 4 | MR. SRINIVASAN:  Good afternoon, Your Honor.  Karthik |
| 15:41:47 | 5 | Srinivasan and Michael Galdo for the government. |
| 15:41:49 | 6 | MR. BROWN:  Good afternoon, Your Honor.  Shawn Brown |
| 15:41:52 | 7 | from San Antonio for Ryan Faircloth. |
| 15:42:26 | 8 | THE COURT:  Will the defendant please state his name. |
| 15:42:27 | 9 | THE DEFENDANT:  Ryan Taylor Faircloth. |
| 15:42:31 | 10 | THE COURT:  Mr. Faircloth, you have pleaded guilty to |
| 15:42:33 | 11 | count one of an indictment charging you with arson, a Class C |
| 15:42:37 | 12 | felony; is that correct? |
| 15:42:38 | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 15:42:39 | 14 | THE COURT:  You pleaded guilty on January the 10th, |
| 15:42:42 | 15 | 2022 before United States Magistrate Judge Susan Hightower. |
| 15:42:48 | 16 | Do you remember that? |
| 15:42:49 | 17 | THE DEFENDANT:  Yes, Your Honor. |
| 15:42:50 | 18 | THE COURT:  Is it your intention to continue with |
| 15:42:51 | 19 | your plea of guilty today? |
| 15:42:53 | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 15:42:54 | 21 | THE COURT:  Is there a plea agreement in this case? |
| 15:42:57 | 22 | MR. SRINIVASAN:  Yes, Your Honor. |
| 15:42:58 | 23 | THE COURT:  Mr. Faircloth, do you reaffirm the |
| 15:43:01 | 24 | statements that you made in your plea agreement as well as the |
| 15:43:05 | 25 | statements that were made in factual basis that was presented |

15:43:08  1    to Judge Hightower at the time you made your plea of guilty?

15:43:12  2              THE DEFENDANT:  Yes, Your Honor.

15:43:13  3              THE COURT:  Then the court accepts and adopts the

15:43:15  4    report and recommendation of the magistrate judge, accepts your

15:43:19  5    plea of guilty, and finds you guilty of the offense to which

15:43:23  6    you have pleaded guilty.  Have you had sufficient time to

15:43:29  7    review with your lawyer the presentence investigation report

15:43:34  8    prepared by the probation department in this case?

15:43:36  9              THE DEFENDANT:  Yes, Your Honor.

15:43:38  10             THE COURT:  Do you understand that under the

15:43:40  11   guidelines established by the United States Sentencing

15:43:42  12   Commission, which are advisory to this court, the probation

15:43:50  13   department has computed your total offense level as 33 and your

15:43:53  14   criminal history category as six, meaning that if this court

15:44:00  15   were to determine that a guideline sentence was an appropriate

15:44:02  16   sentence to impose in this case, I could sentence you to

15:44:07  17   240 months confinement in the Bureau of Prisons, a term of

15:44:15  18   supervised release of three years, a fine of $250,000,

15:44:17  19   restitution in the amount of $12,472.84, and a special

15:44:24  20   assessment of $100?

15:44:27  21             THE DEFENDANT:  Yes, Your Honor.

15:44:28  22             THE COURT:  Do you also understand that under the

15:44:31  23   statute which you have pleaded guilty and been found guilty, I

15:44:38  24   could sentence you to 20 years confinement in the Bureau of

15:44:40  25   Prisons, and must sentence you to at least five years

15:44:43 1 confinement in the Bureau of Prisons, a term of supervised

15:44:50 2 release of three years, a fine of $250,000, restitution in the

15:44:54 3 amount of $12,472.84, and a special assessment of $100?

15:45:03 4        THE DEFENDANT:  Yes, Your Honor.

15:45:03 5        THE COURT:  Does the government have objection to the

15:45:05 6 presentence investigation report?

15:45:05 7        MR. SRINIVASAN:  Your Honor, we did not file

15:45:07 8 objections.  However, the defendant did file an objection, to

15:45:11 9 which we agree, that a particular guideline enhancement does

15:45:13 10 not apply.

15:45:14 11        THE COURT:  Pardon me.  I didn't understand what you

15:45:16 12 just said, the last part.

15:45:18 13        MR. SRINIVASAN:  I'm sorry, Your Honor.  I'll speak

15:45:20 14 into the microphone.

15:45:20 15        The defendant filed an objection to the presentence

15:45:23 16 investigation report.  We sent a response to probation

15:45:26 17 indicating that we agreed with that objection.  So I just want

15:45:28 18 to be clear that we're not filing an objection, but we do agree

15:45:31 19 with the objection that the defendant filed.

15:45:33 20        THE COURT:  All right.  All right.  Mr. Brown, does

15:45:39 21 the defendant have objection to the presentence investigation

15:45:43 22 report?

15:45:43 23        MR. BROWN:  He does, Your Honor.  And we filed that

15:45:45 24 with the probation department.  And just like the government

15:45:46 25 indicated, we objected to the enhancement for the Act of

15:45:50   1   Terrorism under 18, U.S. Code, 2332(b), indicating that it

15:45:56   2   didn't apply under this particular case with the facts.  And,

15:45:58   3   again, the government agreed based on the facts of this

15:46:01   4   particular case.

15:46:04   5          THE COURT:  So what paragraph are we referring to?

15:46:11   6   Paragraph 26?

15:46:12   7          MR. BROWN:  Judge, there's several that mention it,

15:46:15   8   so it would be 14, 26, 29 --

15:46:16   9          THE COURT:  I'm just interested in how it affects the

15:46:20  10   guideline range that the court considers.  Right now

15:46:25  11   paragraph 26 contains a 12-level addition by virtue of the fact

15:46:36  12   it says the offense is a felony that involved or was intended

15:46:40  13   to promote a federal crime of terrorism.

15:46:44  14          You filed an objection which the government has

15:46:46  15   conceded.  How does that affect paragraph 26?

15:46:51  16          MR. BROWN:  Twenty-six should go from 12 to zero.

15:46:53  17          MR. SRINIVASAN:  That's correct, Your Honor.

15:46:55  18          THE COURT:  All right.  So if I grant that and strike

15:46:58  19   that, then that reduces the adjusted offense level from 36 to

15:47:08  20   24.

15:47:09  21          MR. BROWN:  That's correct, Your Honor.

15:47:10  22          THE COURT:  And then we take off the three-level

15:47:13  23   adjustment for acceptance of responsibility, and that comes up

15:47:16  24   with a total offense level of 21 and a criminal history

15:47:22  25   category of six.

15:47:29  1            MR. BROWN:  Judge, it should be one because the

15:47:30  2   criminal history category carries over with the act of

15:47:34  3   terrorism, and he only has one point, so it should be a

15:47:35  4   category one.

15:47:36  5            MR. SRINIVASAN:  That's correct, Your Honor.

15:47:37  6            THE COURT:  All right.  So it would be 21-1, and the

15:47:42  7   correct guideline range would then be 37 to 46; is that

15:47:46  8   correct?

15:47:47  9            MR. SRINIVASAN:  Yes, Your Honor.

15:47:48  10            MR. BROWN:  That is correct, Your Honor.

15:47:49  11            THE COURT:  All right.  Then based on what has been

15:47:53  12   said to me by the defendant and the concession of the

15:47:56  13   government, the objection is sustained.  The court will

15:48:00  14   consider a total offense level of 21 and a criminal history

15:48:06  15   category of one, to the extent that the court considers a

15:48:13  16   guideline sentence in this case.

15:48:22  17            That ruling having been made, Mr. Brown, do you know

15:48:25  18   of any legal reason why the court should not proceed with

15:48:27  19   sentencing at this time?

15:48:28  20            MR. BROWN:  None that I'm aware of at this time,

15:48:30  21   Your Honor.

15:48:30  22            THE COURT:  Mr. Srinivasan, does the government know

15:48:33  23   of any legal reason why the court should not proceed with

15:48:36  24   sentencing at this time?

15:48:37  25            MR. SRINIVASAN:  No, Your Honor.

```
15:48:42   1              THE COURT:  Mr. Brown, Mr. Faircloth, if either or
15:48:44   2    both of you have anything that you would like to say to the
15:48:47   3    court before the court pronounces sentence, I will hear from
15:48:50   4    you at this time and I will take whatever you have to say into
15:48:53   5    account in determining the appropriate sentence to impose in
15:48:55   6    this case.
15:49:02   7              THE DEFENDANT:  Thank you, Your Honor.  I would like
15:49:04   8    to start my statement with an apology.  I'd like to apologize
15:49:08   9    to the people here on my left for putting them -- for my
15:49:12  10    actions and any trauma I may have brought to them.  I'd like to
15:49:16  11    apologize to my friends and family here for putting them in
15:49:20  12    this situation and the things they have gone through with me.
15:49:23  13    As a whole, I'd like to I apologize to the entire courtroom for
15:49:26  14    having to be here today at this time due to the decisions I
15:49:30  15    made.
15:49:30  16              I can honestly say my actions that night have been
15:49:33  17    the most irrational and illogical thing I've ever done, and I
15:49:37  18    hope to put all of this behind me soon some day.
15:49:40  19              I want to thank Magistrate Judge Hightower for
15:49:44  20    allowing me to be out on bond so I can spend time with my
15:49:47  21    family, friends, and have some time to get my affairs in order.
15:49:50  22              I ask that my sentence only be dealt with fairness
15:49:53  23    and every factor be thought about for this situation.  I've
15:49:57  24    learned lessons, I'm continuing to learn lessons, and I know I
15:50:02  25    will learn more lessons in the future.
```

| | | |
|---|---|---|
| 15:50:04 | 1 | Thank you, Your Honor. |
| 15:50:05 | 2 | THE COURT:  Mr. Brown? |
| 15:50:05 | 3 | MR. BROWN:  Yes, sir, Your Honor.  Just briefly, we |
| 15:50:07 | 4 | filed a sentencing memorandum kind of supporting our position. |
| 15:50:12 | 5 | Mr. Faircloth did subject himself to Therapist Pace, who has |
| 15:50:17 | 6 | been addressing any issues that he's had.  He's had some |
| 15:50:21 | 7 | issues: familial issues, relationship issues, and drug and |
| 15:50:26 | 8 | alcohol issues.  And he's -- he went on his own to get this |
| 15:50:30 | 9 | counseling.  It's helped him tremendously grow as a person.  I |
| 15:50:35 | 10 | think it's helped him come to terms with the statement that he |
| 15:50:38 | 11 | just made to this court. |
| 15:50:39 | 12 | He accepted responsibility from a very early stage. |
| 15:50:44 | 13 | Even before he took a plea in this case, Judge, he gave, I want |
| 15:50:48 | 14 | to say, an hour-and-20-minute confession to law enforcement |
| 15:50:51 | 15 | when they met with him and first arrested him.  He went step by |
| 15:50:56 | 16 | step and answered their questions.  And so we would ask the |
| 15:50:58 | 17 | court to take that into consideration, the sentencing memo, the |
| 15:51:01 | 18 | letters of support, the fact that he took it upon himself to |
| 15:51:06 | 19 | see a therapist and address any issues.  As the court knows, it |
| 15:51:10 | 20 | it's like an onion.  You keep peeling layers back and more |
| 15:51:13 | 21 | issues come up.  But Ryan has been very diligent in addressing |
| 15:51:18 | 22 | them and has come along way since his date of arrest in this |
| 15:51:22 | 23 | particular matter. |
| 15:51:26 | 24 | THE COURT:  Just a minute, please.  I want to ask you |
| 15:51:28 | 25 | about one thing.  I'm reviewing the plea agreement that you've |

15:51:36  1  entered into.  With regard to Rule 11(c)(1)(B) of the Federal

15:51:44  2  Rules of Criminal Procedure, both sides have agreed to that and

15:51:50  3  are recommending that as an appropriate sentence to me; is

15:51:54  4  that's correct?

15:51:55  5          MR. BROWN:  That's correct, Your Honor.  It was a

15:51:57  6  recommended sentence for the Court to consider.  It's between

15:52:01  7  which 60, which is the minimum -- 60 months to 72 months.

15:52:05  8          THE COURT:  All right.  Anything further from the

15:52:09  9  defense at this time?

15:52:10  10          MR. BROWN:  Nothing at this time, Your Honor.

15:52:11  11          THE COURT:  All right.  Mr. Srinivasan, I'll hear

15:52:13  12  from the government.

15:52:14  13          MR. SRINIVASAN:  Thank you, Your Honor.  We ask the

15:52:16  14  Court to impose a sentence of 72 months in this case, which is

15:52:19  15  the high end of the recommended range.

15:52:22  16          Your Honor, when we were having discussion earlier

15:52:25  17  about the guidelines enhancement, we took the position that the

15:52:29  18  12-level enhancement did not apply in this case by its

15:52:33  19  technical legal terms, Your Honor, because the defendant's

15:52:36  20  conduct was primarily focused on a political party, and that's

15:52:40  21  where his animus was focused as opposed to the government and

15:52:44  22  retaliation for government conduct.

15:52:46  23          That, however, does not end the story, Your Honor,

15:52:48  24  because Application Note 4 to the guideline asks the Court to

15:52:53  25  consider whether the defendant's conduct was designed to

15:52:57  1  intimidate or coerce a civilian population.  And that's exactly
15:53:03  2  what the defendant did here when he fire-bombed the Travis
15:53:06  3  County Democratic Party offices.
15:53:08  4          This was an act of political violence.  The defendant
15:53:10  5  was filled with political and social grievances ranging from
15:53:14  6  the actions of the current administration, to border policies,
15:53:18  7  to abortion, to the 2020 election.  But rather than exercising
15:53:22  8  his rights peacefully through the political process to persuade
15:53:26  9  his fellow citizens about his views, he pinned those grievances
15:53:30  10  on the Democratic Party and fire-bombed the local party
15:53:35  11  offices.
15:53:35  12          He's been convicted of arson, Your Honor, but we
15:53:38  13  should call this what it was.  It was ideologically motivated
15:53:41  14  firebombing of a political party office in the heart of Austin.
15:53:45  15          In the span of about two hours, in the dead of night
15:53:48  16  on September 29th, the defendant decided to carry out this
15:53:52  17  attack, assembled a Molotov cocktail from items that were
15:53:56  18  readily available to him, researched the location of the
15:54:00  19  democrat party offices, and he went there to burn the place
15:54:04  20  down.
15:54:05  21          And there should be no question about the defendant's
15:54:07  22  intent in committing this crime.  He went to the door of the
15:54:10  23  party offices three times that night.  The first time he threw
15:54:13  24  a rock in the door.  The second time he dropped the Molotov
15:54:18  25  cocktail in, along with a smoke bomb.  It didn't light that

15:54:23  1  time, so he went back a few minutes later and he dropped a lit

15:54:26  2  firecracker, what he called later an artillery shell, into the

15:54:32  3  offices.  The gasoline caught fire, and the party offices could

15:54:36  4  have burned down.

15:54:38  5          Now, no one was hurt during this crime, Your Honor.

15:54:44  6  However, that was dumb luck.  A Good Samaritan just happened to

15:54:50  7  be across the street, had a fire extinguisher, was able to make

15:54:54  8  it there within moments, and tried to put this fire out.  But

15:54:57  9  the defendant's conduct certainly placed, at a minium, the

15:55:02  10  lives and the safety of first responders at risk, because those

15:55:06  11  would have been the individuals who would have needed to go

15:55:08  12  into this inferno to put it out to protect life and property.

15:55:13  13          And, Your Honor, we know that he intended that

15:55:16  14  explosion and that fire because, as soon he dropped that

15:55:22  15  artillery shell, that lit artillery shell, he ran from the

15:55:26  16  door.  You don't run unless you expect an explosion.

15:55:30  17          All of the 3553(a) factors in this case weigh in

15:55:35  18  favor of upward departure to 72 months.  The nature and

15:55:39  19  circumstances of this offense were extremely serious.  Although

15:55:42  20  the defendant does not have a significant criminal history, his

15:55:45  21  actions were ideologically motivated.  The flash to bang in

15:55:50  22  this case, the time from decision and construction of the

15:55:52  23  weapon to the time when he attacked the party offices, was

15:55:55  24  around two hours, Your Honor.  It was very, very quick.  It was

15:55:59  25  premeditated.  He knew exactly what he was doing.

| | | |
|---|---|---|
| 15:56:03 | 1 | A sentence of 72 months, Your Honor, will promote |
| 15:56:06 | 2 | respect for the law and deter this kind of conduct because it |
| 15:56:09 | 3 | would send a message that political violence of the kind that |
| 15:56:13 | 4 | this defendant engaged in is unacceptable and will be met with |
| 15:56:18 | 5 | stern justice.  Thank you, Your Honor. |
| 15:56:21 | 6 | THE COURT:  Does probation have anything further |
| 15:56:22 | 7 | before sentence is imposed? |
| 15:56:23 | 8 | PROBATION OFFICER:  No, Your Honor. |
| 15:56:23 | 9 | THE COURT:  Is there anyone here present in the |
| 15:56:24 | 10 | audience that desires to speak with regard to this case before |
| 15:56:27 | 11 | the court imposes sentence?  If so, please come forward at this |
| 15:56:30 | 12 | time. |
| 15:56:33 | 13 | Seeing none -- |
| 15:56:34 | 14 | MR. SRINIVASAN:  Your Honor, I think that one of the |
| 15:56:36 | 15 | victim representatives may be here. |
| 15:56:39 | 16 | THE COURT:  Well, that's fine.  It's just when I call |
| 15:56:43 | 17 | people to come forward, I expect them to get right up and come |
| 15:56:46 | 18 | forward.  And if there's anyone else who desires to speak, get |
| 15:56:49 | 19 | up at this point and come to the gate where the court security |
| 15:56:53 | 20 | officer is. |
| 15:56:54 | 21 | The first lady may come forward.  Please state your |
| 15:56:57 | 22 | name and then share anything you desire to share with the |
| 15:57:02 | 23 | court.  And anyone else who may want to speak, get up at this |
| 15:57:05 | 24 | time and come to the gate where the court security officer is. |
| 15:57:07 | 25 | Please proceed. |

15:57:10  1          MS. NARANJO:  My name is Katie Naranjo.  And I

15:57:12  2  apologize, Your Honor.  I sat my son down, so it took me a

15:57:14  3  second.  I'm the chair of the Travis County Democratic Party.

15:57:19  4  The Travis County Democratic Party is a volunteer-run and -led

15:57:22  5  organization.  We span with volunteers, activists, staff, and

15:57:28  6  elected officials.

15:57:30  7          On the night of September 29th -- or the morning of

15:57:32  8  September 29th when the event occurred, it was a shock to my

15:57:36  9  staff and I.  And I understand political discourse these days

15:57:40  10  for any party, for any individual, is fraught with emotion.

15:57:48  11  However, violent acts do not have a place in our civil society.

15:57:54  12          The individuals that Mr. Faircloth was bombing were

15:57:58  13  social workers, an Army veteran, a public policy student, and

15:58:04  14  students at UT, my staff and my interns, the people who reside

15:58:08  15  in that office.

15:58:10  16          We have been the subject of a number of attacks,

15:58:15  17  unfortunately, and that discourse in our society must be dealt

15:58:18  18  with in a serious manner.  Sentencing is important.  However,

15:58:23  19  our sincerest hope from the party is for rehabilitation so that

15:58:27  20  the violence ends, the violence stops within our communities,

15:58:31  21  the violence stops within our political process.

15:58:35  22          Mr. Faircloth threw a number of things that night,

15:58:38  23  including an incendiary device, a bomb, because he wanted to

15:58:43  24  assert his power over other people.  I can't go into his

15:58:46  25  motives, but my understanding was the gloating and the letters

15:58:50  1   he left were meant to incite terror.  I do take slight offense

15:58:53  2   that that's not considered, was the emotional intimidation

15:58:58  3   intended to prevent others from participating in the political

15:59:01  4   process, as well as hoping that others would copycat him to

15:59:05  5   take action against others.

15:59:07  6        That's why I'm here today.  I'm not here -- it's not

15:59:12  7   easy to be here with my child, obviously.  Unfortunately, my

15:59:15  8   husband had to work.  But I'm here because we sincerely want

15:59:20  9   violence to stop in our political process, and that any

15:59:22  10  individual who participates in a violent act in a civil society

15:59:26  11  be held accountable, but more importantly, be rehabilitated to

15:59:31  12  reenter society and not continue to have violent thoughts and

15:59:35  13  behaviors that did -- that did happen prior to the actions he

15:59:39  14  took and after the actions he took on that evening.

15:59:46  15       The interesting thing is Mr. Faircloth has not

15:59:49  16  exercised what is his most powerful tool: his right to vote.

15:59:53  17  He has no voter history.  So instead of throwing a bomb, he

15:59:58  18  could have thrown his vote into an election.  And we encourage

16:00:02  19  all citizens to participate peacefully to have their voice

16:00:06  20  heard, not through violence, but through the right to vote.

16:00:09  21       Thank you, Your Honor.

16:00:10  22       THE COURT:  Thank you.

16:00:25  23       Seeing no one else, Mr. Faircloth, Mr. Brown, if

16:00:32  24  either or both of you have anything you would like to say in

16:00:35  25  addition to what you've already said or in response to anything

16:00:40  1  that's been said by anyone else, I'll hear from you at this

16:00:43  2  time.

16:00:43  3          MR. BROWN:  Just briefly, Your Honor.  The range of

16:00:45  4  punishment on this particular case would be 37 to 46 months.

16:00:48  5  As we know, the mandatory minimum is 60, so it's below the

16:00:52  6  mandatory minimum.  The government is asking that the sentence

16:00:55  7  in the low end of guideline range be essentially doubled for

16:00:58  8  this particular case.  We're asking that he be sentenced at the

16:01:03  9  low end of the range of punishment on this particular case,

16:01:06  10  which is 60 months.

16:01:08  11          I think that's more than sufficient under the

16:01:10  12  circumstances of this particular case for the actions and for

16:01:15  13  what transpired.  Like we mentioned previously, Mr. Faircloth

16:01:20  14  readily accepted responsibility, pled fairly early on in this

16:01:25  15  particular case, gave a lengthy confession just as the officers

16:01:30  16  took him into custody.

16:01:31  17          So under those circumstances, Judge, plus with the

16:01:34  18  sentencing memo that we have filed before this particular

16:01:36  19  court, we would ask for a sentence of 60 months.

16:01:43  20          THE COURT:  Mr. Faircloth, anything in addition you

16:01:45  21  wish to say personally?

16:01:47  22          THE DEFENDANT:  No, Your Honor.

16:01:53  23          THE COURT:  The Court has read and reviewed the

16:01:56  24  presentence investigation report prepared by the probation

16:01:58  25  department in this case.  And after sustaining the objection to

16:02:05  1  the report, I find the correct total offense level is 21, the

16:02:10  2  correct criminal history category is one, and the correct

16:02:12  3  guideline range is a term of 37 to 47 months, but the court

16:02:17  4  also notes that that guideline range would be adjusted to 60

16:02:24  5  months because of the statutory minimum in this case, and I

16:02:30  6  accept and adopt that report.

16:02:31  7       I have further reviewed carefully the plea agreement

16:02:36  8  in this case which provides under Rule 11(c)(1)(B) of the

16:02:43  9  Federal Rules of Criminal Procedure that the parties recommend

16:02:51  10  to the court that the appropriate resolution of this case would

16:02:55  11  include a term of imprisonment between 60 months and 72 months

16:03:01  12  custody in the Bureau of Prisons.  And, of course, the

16:03:04  13  government is arguing for 72 months, and the defendant is

16:03:07  14  arguing for 60 months.

16:03:09  15       In addition, I have reviewed the sentencing

16:03:14  16  memorandum in this case.  I have reviewed the letters and other

16:03:20  17  information provided me from the executive director and chair

16:03:26  18  of the Travis County Democratic Party.  And I've heard the

16:03:31  19  statements this morning -- or this afternoon by Ms. Naranjo and

16:03:37  20  the statements heard -- I mean statements of the defendant in

16:03:39  21  this case, all of which I have taken into account.  And I've

16:03:47  22  heard the statements by the lawyers.

16:03:49  23       As stated during the discussion on the objection to

16:03:56  24  the presentence investigation report, that technically under

16:04:00  25  the law -- if anything is technical under the law or whether

16:04:03  1    it's just the law -- there was inadequate evidence that this

16:04:09  2    was an act of terrorism as defined by the statute.  That having

16:04:15  3    been said, that does not in any way lesson the gravity of the

16:04:24  4    actions of this defendant.

16:04:27  5           This was an attack on the government of the United

16:04:29  6    States.  We have a party system -- political party system in

16:04:33  7    this country that has two primary political parties who conduct

16:04:38  8    primary elections which choose the candidates, one of which --

16:04:43  9    one of whom is generally elected to a political office.  So the

16:04:48  10   court considers this to be an attack on an institution of

16:04:53  11   government.

16:04:54  12          I further find from my review of the presentence

16:04:57  13   investigation report and the evidence before me that it was an

16:05:04  14   attempt by this defendant to intimidate or coerce an

16:05:12  15   institution of at least democracy, if not the government

16:05:15  16   itself.

16:05:17  17          Attacks on our way of life and the way we govern

16:05:23  18   ourselves cannot be overstated in their importance.  We're

16:05:29  19   living in a difficult time right now.  Our traditional

16:05:36  20   institutions of government are under constant attack and are

16:05:39  21   discredited.  And I find that this case, while although not

16:05:45  22   legally an act of terrorism is similar to an act of terrorism.

16:05:53  23          I believe that you, Mr. Faircloth, have given a

16:06:04  24   pretty good break and have been well represented by the plea

16:06:07  25   agreement that has been negotiated in this case, and I will

16:06:12  1  accept the recommendation in the plea agreement and sentence

16:06:20  2  within the range that you have agreed upon.

16:06:22  3       In doing so, though, I have considered all of the

16:06:29  4  factors in Title 18 of the United States Code, particularly

16:06:37  5  with regard to the seriousness of the offense. If I have not

16:06:41  6  made it clear up to this point, I consider this one of the most

16:06:43  7  serious of offenses in this case. And that is what I've looked

16:06:51  8  most strongly and most pointedly at in the Title 18, 3553

16:06:59  9  factors.

16:06:59  10       I find that the sentence I'm going to impose is in

16:07:03  11  keeping with your plea bargain agreement; that it is a sentence

16:07:07  12  that is tailored to meet the facts and circumstances of your

16:07:10  13  background and the offense for which you have been convicted;

16:07:14  14  that it is a sentence that takes into account all of the

16:07:18  15  factors in Title 18 of the United States Code, Section 3553,

16:07:23  16  all of which I have considered and only one I have mentioned

16:07:28  17  within any emphasis at the point; and that this is a reasonable

16:07:32  18  sentence to impose in this case.

16:07:35  19       Therefore, pursuant to the Sentencing Reform Act of

16:07:37  20  1984, it is the judgment of this court that you, Ryan Taylor

16:07:42  21  Faircloth, are hereby sentenced to 72 months confinement in the

16:07:47  22  Bureau of Prisons.

16:07:49  23       It is my recommendation to the Bureau that you be

16:07:52  24  placed in their facility at La Tuna in El Paso and that you be

16:07:57  25  afforded the most intensive drug counseling and treatment that

16:08:06 1  are provided in any institution where you're held and that you

16:08:09 2  be provided with educational training and courses to the extent

16:08:14 3  they're available at the institution to which you are assigned.

16:08:18 4  And it is my recommendation to you that you take advantage of

16:08:22 5  those.

16:08:24 6        Upon release from imprisonment, you shall be placed

16:08:26 7  on supervised release for a term of three years.  Within 72

16:08:31 8  hours of release from the custody of the Bureau of Prisons, you

16:08:34 9  shall report in person to the probation office in the district

16:08:37 10 to which you are released.

16:08:39 11       While on supervised release, you shall not commit

16:08:42 12 another, federal, state or local crime, and you shall comply

16:08:45 13 with the mandatory and standard conditions adopted by this

16:08:48 14 court on November 28th, 2016.

16:08:52 15       In addition, you shall comply with the follow special

16:08:55 16 conditions:  You shall participate in a substance abuse

16:08:59 17 treatment program and follow the rules and regulations of that

16:09:02 18 program.  The program may include testing and examination

16:09:06 19 during and after program completion to determine if you have

16:09:13 20 reverted to the use of drugs or alcohol.  A probation officer

16:09:16 21 may supervise your participation in the program, and you shall

16:09:19 22 pay the costs of the program and any treatment to the extent

16:09:22 23 you are financially able.

16:09:24 24       During your term of supervision, you shall abstain

16:09:27 25 from the use of alcohol and any and all intoxicants.  You shall

16:09:32 1 submit to substance abuse testing to determine if you have used

16:09:37 2 a prohibited substance.  You shall not attempt to obstruct or

16:09:41 3 tamper with any testing method, and you shall pay the cost of

16:09:45 4 any testing to the extent you are financially able.

16:09:49 5        You shall submit your person, property, house,

16:09:52 6 residence, office, vehicle, papers, computers as defined in

16:09:55 7 Title 18 of the United States Code, section 1030(e)(1), and all

16:10:00 8 over electronic communications or data storage devices or media

16:10:05 9 to a search conducted by a United States probation officer.

16:10:09 10 Your failure to submit to a search may be grounds for

16:10:14 11 revocation of your release.

16:10:15 12        You shall warn any other occupant of any premises

16:10:18 13 that you occupy that those premises may be subject to searches

16:10:22 14 pursuant to this condition.  A probation officer may conduct a

16:10:25 15 search under this condition when a reasonable suspicion exists

16:10:30 16 that you have violated a condition of your supervision.  Any

16:10:34 17 search must be conducted at a reasonable time and in a

16:10:37 18 reasonable manner.

16:10:38 19        It is further ordered that you make restitution in to

16:10:41 20 the following victims totaling $12,472.84:

16:10:48 21        To the Travis County Democratic Party, 1311 East

16:10:53 22 6th Street, Unit B, Austin Texas 78702, restitution in the

16:10:58 23 amount of $9,472.84; to Lorenzco, Inc. 1311-A East 6th Street,

16:11:09 24 Austin, Texas 78702, restitution in the amount of $3,000.

16:11:16 25        If you are not now able to pay this indebtedness, you

16:11:18  1  shall cooperate fully with the Office of the United States

16:11:21  2  Attorney, the Bureau of Prisons, and the United States

16:11:24  3  Probation Office to make payment in full as soon as possible,

16:11:28  4  including during any period of incarceration.

16:11:32  5       Any unpaid balance at the commencement of a term of

16:11:35  6  supervised release shall be paid on a schedule of monthly

16:11:38  7  installments to be established by the United States Probation

16:11:43  8  Office and approved by the court.

16:11:45  9       It is additionally ordered that you shall pay the

16:11:48  10  United States -- to the United States a fine of $5,000.  It is

16:11:52  11  further ordered that you shall pay to the United States a

16:11:55  12  special mandatory assessment of $100.

16:12:01  13       Mr. Faircloth, at this time I am handing to the clerk

16:12:05  14  of this court the presentence investigation report prepared by

16:12:09  15  the probation department in this case and to which we have

16:12:11  16  referred during this proceeding.  I'm ordering that that report

16:12:15  17  be sealed.  That means that no one may come to the district

16:12:18  18  clerk's office and read about you or any member of your family

16:12:24  19  or any of the facts and circumstances surrounding the offense

16:12:27  20  for which you have been convicted and sentenced today which may

16:12:30  21  be contained in that report.

16:12:32  22       However, I wish to advise you that if for any

16:12:35  23  reason -- pardon me.  I wish to advise you that if there is an

16:12:39  24  appeal from the sentence that I have just imposed, both you and

16:12:46  25  the government may use your copies of the appeal -- pardon

| | | |
|---|---|---|
| 16:12:49 | 1 | me -- copies of the presentence investigation report for |
| 16:12:52 | 2 | purposes of appeal, and in that event the presentence |
| 16:12:54 | 3 | investigation report will become part of the record on appeal. |
| 16:12:56 | 4 | Do you understand that? |
| 16:13:01 | 5 | THE DEFENDANT: Yes, Your Honor. |
| 16:13:01 | 6 | THE COURT: Pursuant to the terms of your plea |
| 16:13:03 | 7 | agreement, you have waived your right to appeal the sentence |
| 16:13:05 | 8 | that I have just imposed except under certain circumstances set |
| 16:13:09 | 9 | forth in that agreement. In a moment I will be passing to you |
| 16:13:13 | 10 | and your lawyer letters that more fully explain that. |
| 16:13:16 | 11 | However, I wish to tell you at this time that if for |
| 16:13:20 | 12 | any reason you desire to appeal the sentence that I have just |
| 16:13:23 | 13 | imposed or if for any reason you think you have a right to |
| 16:13:26 | 14 | appeal that sentence, you may only do so if you first file with |
| 16:13:30 | 15 | the clerk of this court within 14 days a Written Notice of |
| 16:13:33 | 16 | Appeal. That's a written document called a "Notice of Appeal." |
| 16:13:37 | 17 | If you do not file such a written Notice of Appeal |
| 16:13:40 | 18 | with the clerk of this court within 14 days, you can never |
| 16:13:44 | 19 | appeal the sentence that I have just imposed and you will |
| 16:13:46 | 20 | forever waive your right to appeal that sentence. |
| 16:13:49 | 21 | Do you understand that? |
| 16:13:52 | 22 | MR. BROWN: Yes, Your Honor. |
| 16:13:53 | 23 | THE COURT: Then at this time I am passing to you and |
| 16:13:55 | 24 | your lawyer letters that more fully explain that. |
| 16:13:57 | 25 | Mr. Brown, do you care to be heard on whether the |

16:14:04  1  defendant should be allowed to self-surrender or whether he

16:14:08  2  should be remanded into custody at this time?

16:14:12  3      MR. BROWN:  I would like to be heard on that,

16:14:14  4  Your Honor.  We would ask for the opportunity to

16:14:16  5  self-surrender.  He's been in compliance with pretrial.  I had

16:14:20  6  asked for a report today just to make sure that was consistent.

16:14:23  7  But after talking to my client, I believe he's been in

16:14:27  8  compliance with pretrial, with his curfew, with all the other

16:14:30  9  conditions that the Court has ordered as part of his pretrial

16:14:33  10 release.  So we would ask that he be able to self-surrender.

16:14:38  11      THE COURT:  Mr. Srinivasan.

16:14:39  12      MR. SRINIVASAN:  Your Honor, the government initially

16:14:41  13 asked for remand in this case.  We defer to the Court's

16:14:46  14 judgment on whether to order self-surrender.  We're not taking

16:14:49  15 a position on that.  We understand that the defendant has for

16:14:51  16 the most part been compliant.  This was, however, a serious

16:14:54  17 offense.  He's been convicted of that offense and sentenced for

16:14:57  18 that offense.  We defer to the Court's judgment on that.

16:15:00  19      THE COURT:  It is a serious offense, but the

16:15:03  20 probation department has not advised of anything that leads the

16:15:08  21 court to believe the defendant is a flight risk or a danger to

16:15:12  22 the community at this time.  And I have received a status

16:15:16  23 report from pretrial services that he continues to abide by the

16:15:24  24 rules and regulations of the location monitoring program.

16:15:28  25      So I will allow him to remain at large provided,

16:15:34 1  Mr. Faircloth, you represent to the court that if I allow you

16:15:38 2  to remain at large under the same terms and conditions of your

16:15:42 3  current release, that you will report when and where as

16:15:46 4  directed by the Bureau of Prisons, the United States Marshals,

16:15:50 5  or any other agency of the federal gothernment.

16:15:53 6          THE DEFENDANT:  Yes, Your Honor.

16:15:53 7          THE COURT:  All right.  Then I will not remand you at

16:15:56 8  this time.  You will be allowed to self-surrender.  But until

16:16:01 9  that point, you will be under the same constraints and rules as

16:16:06 10 your previous pretrial release, and I instruct you to speak

16:16:10 11 with the pretrial services office before you leave this

16:16:13 12 building today to see if they have any immediate instructions

16:16:17 13 to you.

16:16:17 14          Do you understand that?

16:16:19 15          THE DEFENDANT:  Yes, Your Honor, I do.

16:16:20 16          THE COURT:  Is there anything further to come before

16:16:22 17 the court in this case at this time?

16:16:24 18          MR. SRINIVASAN:  Not from the gothernment.  Thank

16:16:25 19 you.

16:16:26 20          MR. BROWN:  Nothing from defense, Your Honor.  Thank

16:16:27 21 you.

16:16:28 22          THE COURT:  At this time the court dismisses any

16:16:30 23 pending motions on which the court has not previously ruled.

16:16:33 24          You are excused.  Good luck to you, Mr. Faircloth.

16:16:37 25     (End of transcript)

1  **UNITED STATES DISTRICT COURT        )**

2  **WESTERN DISTRICT OF TEXAS            )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10      WITNESS MY OFFICIAL HAND this the 2nd day of June 2022.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2023
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25